UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ACADIA PHARMACEUTICALS INC. SECRUTIES LITIGATION | Case No.: 18-CV-01647-AJB-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO STRIKE; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>**(Doc. Nos. 52, 56)** |

Pending before the Court are Plaintiff's motion to strike, (Doc. No. 56), and Defendants' motion to dismiss the consolidated amended class action complaint, (Doc. No. 52). Defendants oppose Plaintiff's motion, (Doc. No. 59), and Plaintiff opposes Defendants' motion, (Doc. No. 55). For the reasons set forth more fully below, the Court **GRANTS** Plaintiff's motion to strike and **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss.

///

///

# I. BACKGROUND

Plaintiff represents a class of those who acquired ACADIA securities between April 29, 2016, and July 9, 2018, and who are suing under the Securities Exchange Act of 1934. (Doc. No. 48 ¶ 1.)[1] Plaintiffs allege that on April 29, 2016, the U.S. Food and Drug Administration ("FDA") approved ACADIA's lead drug, NUPLAZID. (*Id.* ¶¶ 2, 3.) Prior to approval, NUPLAZID went through four randomized, controlled trials for safety and efficacy. (*Id.* ¶ 41.) The scale used as the primary efficacy variable failed to show a statistically significant improvement in psychosis symptoms in three of the trials. (*Id.*) The fourth trial was statistically positive for efficacy, however 11.6% of trial patients discontinued the trial. (*Id.* ¶ 42.) In August 2014, ACADIA received a "Breakthrough Therapy Designation" for NUPLAZID. (*Id.* ¶ 43.) On September 1, 2015, ACADIA then submitted a new drug application to the FDA. (*Id.* ¶ 45.)

In September 2015, Dr. Paul Andreason, the primary reviewer for the FDA of ACADIA's new drug application for NUPLAZID, issued a clinical review in September 2015 with a recommendation of "do not approve" based in part on the high death rate. (*Id.* ¶ 46.) On March 29, 2016, an advisory committee voted to approve the drug. (*Id.* ¶ 48–49.) The FDA accepted the committee's recommendation and approved NUPLAZID the following month. (*Id.* ¶ 50.) A black box warning was placed on NUPLAZID that indicated there is an increased risk of death in elderly patients with dementia-related psychosis treated with antipsychotic drugs. (*Id.*) On May 31, 2016, NUPLAZID commercially launched. (*Id.* ¶ 51.)

Following the launch of NUPLAZID, ACADIA spent $609,556 on consulting, speaking, and travel and lodging payments with payments to individual doctors as large as $25,690 and $19,145. (*Id.* ¶ 67.) In 2017, ACADIA paid more than $8.6 million, with 62 doctors receiving more than $50,000 each, and 26 receiving at least $100,000. (*Id.* ¶ 68.)

---

[1] The following facts are taken from Plaintiff's complaint and construed as true for the limited purpose of resolving this motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

Many of the physicians who had received the consulting fee in 2016 and 2017 prescribed NUPLAZID in 2016. (*Id.* ¶ 71.)

The Class Period begins on April 29, 2016, when ACADIA issued a press release saying the FDA had approved NUPLAZID. (*Id.* ¶ 73.) On May 3, 2016, three members of ACADIA's board of directors announced they were leaving the company. (*Id.* ¶ 80.) On November 7, 2016, ACADIA stated that it was receiving positive feedback from doctors, patients, and caregivers regarding the drug, prescription growth, and net product sales. (*Id.* ¶ 94.)

In April 2018, CNN published an article that expressed concern over reports of deaths from NUPLAZID and concerns that the drug had been approved too quickly. (*Id.* ¶ 121.) On April 9, 2018, ACADIA's stock price fell 23.4%. (*Id.* ¶ 122.) Two weeks later, the FDA announced it would reexamine NUPLAZID's safety. (*Id.* ¶ 125.) ACADIA's stock dropped 21.9% on April 25, 2018. (*Id.* ¶ 126.)

On July 9, 2019, the Southern Investigative Reporting Foundation ("SIRF") published a report that ACADIA accomplished its commercial success by "dispensing wads of cash to doctors to incentivize prescription writing and downplaying mounting reports of patient deaths." (*Id.* ¶¶ 132–33.) On July 9, 2019, ACADIA's stock price dropped 6.8%. (*Id.* ¶ 134.)

Over four months later, ACADIA filed a prospectus supplement containing a statement that said the company had "received a civil investigative demand, or CID, from the DOJ pursuant to the Federal False Claims Act requesting certain documents and information related to our sales and marketing of NUPLIZAD." (*Id.* ¶ 135.) The DOJ investigation is ongoing. (*Id.*)

On July 19, 2018, Plaintiff filed a complaint in this litigation. (Doc. No. 1.) On February 26, 2019, the Court granted consolidation, appointed lead plaintiff, and lead counsel. (Doc. No. 41.) Following that Order, Plaintiff filed a consolidated complaint. (Doc. No. 48.) On June 7, 2019, Defendants filed the instant motion to dismiss. (Doc. No.

52.) On July 23, 2019, Plaintiff filed the instant motion to strike. (Doc. No. 56.) This Order follows.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.    DISCUSSION

**A.     Plaintiff's Motion to Strike**

Plaintiff filed a motion pursuant to Federal Rules of Civil Procedure 12(f), Local Civil Rule 7.1(h), and the Court's inherent authority, to strike Exhibit A to the Declaration of Peter M. Adams in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint and references thereto in Defendants' Memorandum in Support of Motion to Dismiss. (Doc. No. 56-1 at 2.)

Federal Rule of Civil Procedure 12(f) provides district courts with the right to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). All district courts have the inherent right to control their own dockets. *See, e.g.*, *Landis v. N. Am.*, 299 U.S. 248, 254 (1936). The Ninth Circuit has affirmed that this power includes the right to strike documents other than pleadings from its dockets. *See Lamos v. Astrue*, 275 F. App'x 617, 618 (9th Cir. 2008); *see also Smith v. Frank*, 923 F.2d 139, 142 (9th Cir. 1991). This District limits briefs filed in support motions to "a total of twenty (25) pages in length per party," absent leave from the Court. Local Civil Rule 7.1(h).

Plaintiff argues that Defendants submitted an exhibit, totaling 25 pages, for the sole purpose of presenting additional arguments against falsity which they could not fit in their Memorandum of Points and Authorities. The Court agrees. Defendants try to assert the argument that this is simply a chart for the Court's convenience, however, that is not the case. While the Court does appreciate charts to simplify complex arguments, Defendants utilized this chart to identify 108 statements encompassing 38 paragraphs of the complaint in a 25-page chart. This is simply an extension of Defendants' argument and thus, Defendants' have exceeded the 25-page limit for their briefs. *See e.g., Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW (FFMx), 2017 WL 10363990, at *4 (C.D. Cal. Nov. 20, 2017) (striking an appendix that highlighted what defendants contended were defects in plaintiff's pleadings).

Defendants argue that the Court should still consider Exhibit A as good cause exists to allow extra pages. (Doc. No. 59 at 3–4.) However, Defendants would have needed to seek leave of the Court prior to filing their brief. Defendants failed to do so.

Accordingly, the Court **GRANTS** Plaintiff's motion to strike.

## B.     Defendants' Request for Judicial Notice

Defendants request judicial notice of fifty-six (56) documents. Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

However, this request reflects "[t]he overuse and improper application of judicial notice." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), *cert. denied* 139 S. Ct. 2615 (2019). Many of the documents for which Defendants seek judicial notice are not appropriate for judicial notice. For example, Defendants seek judicial notice of several press releases, (*see, e.g.*, Doc. No. 52-2, Exs. 11, 14, 15, 18, 21, 24, 27, 31, 34, 39, 44, 45), and transcripts of quarterly earnings calls, (*see, e.g.*, Doc. No. 52-2, Exs. 12, 13, 17, 20, 23, 26, 29, 33, 36, 47), but the Court may not take judicial notice of these documents. *See Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.") (internal quotation marks omitted).

Further, given the number of documents Defendants seek to have considered, the Court finds that such documents would more be appropriate in connection with a motion for summary judgment. *See* Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1366, at 159 ("As the language of [Rule 12(b)(6)] suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."). However, the Court does not convert the instant motion to dismiss to a motion for summary judgment. Accordingly, the Court **DENIES** Defendants' request for judicial notice.

**C.     Defendants' Motion to Dismiss**

Defendants assert that Plaintiffs fail to state a claim under Section 10(b) since Plaintiff fails to identify any actionable misstatement or omission, fails to adequately plead scienter, and fails to adequately plead loss causation. (*See generally* Doc. No. 52-1.) Further, Defendants argue that Plaintiff has failed to state a claim under Section 20(a). (*See generally id.*)

Section 10(b) of the Exchange Act forbids: (1) the use or employment of any deceptive device, (2) in connection with the purchase or sale of any security, and (3) in contravention of Securities and Exchange Commission rules and regulations. 15 U.S.C. § 78j(b); *see Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Additionally, Rule 10b–5, promulgated by the SEC under Section 10(b), forbids the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made not misleading." 17 C.F.R. § 240.10b–5; *see Dura*, 544 U.S. at 341. To succeed in a private civil action under Section 10(b) and Rule 10b–5, a plaintiff must establish "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance ...; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Dura*, 544 U.S. at 341–42.

      i.    <u>Manner of Pleading</u>

Defendants assert that Plaintiff's complaint is a "puzzle pleading" and does not comply with the PSLRA or Rule 9(b). (Doc. No. 52-1 at 20.) Plaintiff's complaint contains a designated section entitled "Materially False and Misleading Statements Issued During the Class Period." (Doc. No. 48 at 23.) While the Court notes that Plaintiff's complaint does contain large block quotes, Plaintiff's complaint does single out the actual statements that are the basis of Plaintiff's securities fraud claim. *Cf. Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013); *Lifschitz v. NextWave Wireless Inc.*, No. 08CV1697-LAB (WMC), 2010 WL 11512356, at *3 (S. D. Cal. Mar. 5, 2010); *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1100 (N.D. Cal. 2006). Accordingly, the Court does not find that Plaintiff's complaint is a "puzzle pleading."

///
///
///
///
///

### ii. Not Actionable Statements

Defendants assert that the alleged misstatements are not actionable because they are accurate statements of fact, forward looking statements, expressions of opinion, and corporate optimism.[2] (Doc. No. 52-1 at 20–22.)

Defendants explain that Plaintiff alleges certain statements such as "Net sales rose to 15.3 million" are misstatements. However, this statement is a true statement. To the extent, Plaintiff seeks to hold Defendants liable for statements that are true, the Court grants Defendants' motion to dismiss. *See* 15 U.S.C. § 78u-4(b)(1); *see, e.g., In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 404 (S.D.N.Y. 2016); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001).

Defendants contend that several of the statements are forward-looking and protected by the PSLRA safe harbor. The Court agrees. Forward-looking statements are protected by the PSLRA safe harbor. *See* 15 U.S.C. § 78u-5(c)(1); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014) (forward-looking statements relate to "future expectations and performance"). For example, the following statements are in fact forward-looking, "we will need to increase awareness and education," "we expect that usage should increase and that the number of patients on drug will likely build over time," and "we're going to show the benefits and we're going to help guide the physician in seeing why NUPLAZID would be their best choice." (Doc. No. 48 ¶¶ 77, 82.) Plaintiff argues that these statements describe Defendants' current commercialization plan and the risk warnings were boilerplate, accordingly these statements are not subject to the safe harbor provision. (Doc. No. 55 at 23.) However, these statements were in relation to future expectations and performance. Accordingly, to the extent, Plaintiff seeks to hold Defendants liable for statements that are forward-looking, the Court grants Defendants' motion to dismiss.

---

[2] As explained above, the Court grants Plaintiff's motion to strike Defendants' Exhibit A. Accordingly, the Court will only address the statements that were contained in Defendants' motion to dismiss. The Court will not evaluate every statement Defendants identified in Exhibit A and determine whether they are accurate statements of fact, forward looking statements, expressions of opinion, and corporate optimism.

Next, Defendants contend that Plaintiff attacks statements of opinion. However, the statements that Defendants point to are not statements of opinion. While Defendants only include the partial quotations in their motion in reading the selected statements in their entirety, it is clear some of these are not statements of opinion. For example, in paragraph 89 of the complaint, the statement, "we are very pleased to see it appears both on the side effects and tolerance side as well as on the efficacy side, everything is supportive of the profile that we – that the drug demonstrated in clinical trials," is simply not an opinion. (Doc. No. 48 ¶ 89.) Further, Defendants assert that in paragraph 94 the statement contains the words "I'm especially pleased," however, paragraph 94 contains no such language. (*Id.* ¶ 94.) However, statements such as "we are confident NUPLAZID over time should become the standard of care for patients with hallucinations and delusions associated with PDP," is a statement of opinion. This statement does improperly form the basis of a securities fraud claim. (*Id.* ¶ 77); *see, e.g.*, *In re Downey Sec. Litig.*, No. CV08-3261-JFW (RZx), 2009 WL 736802, at *6 (C.D. Cal. Mar. 18, 2009). The Court will not parse through the entire complaint to determine which statements are opinion and which are not, but to the extent Plaintiff is relying on statements of opinion, the Court grants Defendants' motion to dismiss.

Defendants argue that Plaintiff relies on statements of corporate optimism. Again, as above, the Court will not parse through each statement of the complaint. However, as examples, the Court finds that the statements such as "there are good reasons for physicians to consider switching their patients," (Doc. No. 48 ¶ 82), and "we saw solid month-over-month prescription growth," (*Id.* ¶ 91) may form the basis for a securities fraud claim. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996) ("general statements of optimism, when taken in context, may form a basis for a securities fraud claim.") However, statements such as "as was the case with the field management team we hired in March of 2015, this truly is an impressive group," (Doc. No. 48 ¶ 77), is a statement of corporate optimism and cannot form the basis of a securities fraud claim. *See Intuitive Surgical*, 759 F.3d at 1060. Thus, to the extent Plaintiff relies upon statement of corporate optimism, the

Court grants Defendants' motion to dismiss.

Accordingly, Plaintiff must base his complaint on statements that are actionable. Plaintiff has currently based his complaint on actionable statements and some not actionable statements. Thus, to the extent Plaintiff bases his causes of action on not actionable statements, the Court **GRANTS** Defendants' motion to dismiss.

iii. <u>Materially False or Misleading Statements</u>

Defendants argue that the alleged misstatements are not misleading as ACADIA fully disclosed the trial results, the post-marketing events were public, and ACADIA had no duty to accuse itself of wrongdoing. (Doc. No. 52-1 at 22–27.) To allege an actionable false or misleading statement, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, ... state with particularity all facts on which that belief is formed." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012) (quoting 15 U.S.C. § 78u-4(b)(1)). This is a demanding standard, requiring a plaintiff to allege with specificity "contemporaneous statements or conditions," *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001), that demonstrate both "how and why the statements were false" when made, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1071–72 (9th Cir. 2008).

a. *Disclosure of the Clinical Trial Results*

Defendants assert that Plaintiff cannot establish a plausible claim. First, Plaintiff asserts that Defendants failed to disclose "that patients treated with NUPLAZID during the Phase III trial died at twice the rate of patients treated with placebo." (Doc. No. 48 ¶ 74.) Defendants assert that this information was publicly accessible in The Lancet and they expressly referred investors to the article. (Doc. No. 52-1 at 23.) Defendants are asserting the truth of the market defense. At this stage, the Court agrees with Plaintiff that this it would be inappropriate to dismiss based on this defense. *In re Iso Ray, Inc. Sec. Litig.*, 189 F. Supp. 3d 1057, 1073 (E.D. Wash. 2016); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008) ("courts rarely dismiss a complaint on this basis.") Further,

the information must be transmitted to the public "with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations." *In re Iso Ray, Inc. Sec. Litig.*, 189 F. Supp. 3d at 1073. Pointing investors to read an article may not qualify as transmitting the information to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression. Accordingly, Plaintiff has established a plausible misleading claim based on the mortality rate.

Next, Defendants contend that Plaintiff does not assert any facts to support several bases to establish misleading statements. First, Plaintiff faults Defendants for failing to disclose that "the risk of death was higher for NUPLAZID as compared to other antipsychotic drugs." (Doc. No. 48 ¶ 87.) Second, Plaintiff accuses Defendants of failing to disclose, "that patients with [PDP] were also at greater risk of death even if they did not suffer from dementia." (*Id.* ¶¶ 50, 87.) And lastly, Plaintiff accuses Defendants of lying to investors by failing to tell them that Dr. Andreason recommended against approval before the advisory committee meeting. (*Id.* ¶¶ 46, 74.) The Court finds that Plaintiffs have alleged sufficient facts to establish that failure to disclose these factors were in fact misleading to investors. *See Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (finding that a statement is misleading if it would give a reasonable investor the "impression of a state of affairs that differs in a material way from the one that actually exists.") Furthermore, this information is simply not trivial and immaterial, and thus was worthy of disclosure.

> b. *Post Marketing Events*

Defendants next argue that the FAERS data cannot give rise to a claim for fraud by omission because the data was public record and investors were presumed to have access to it. (Doc. No. 52-1 at 25); *see Philco Invs. v. Martin*, No. C10-02785 CRB, 2011 WL 4595247, at *9 (N.D. Cal. Oct. 4, 2011) (investors "presumably" had access to FAERS data); *see also Tadros v. Celladon Corp.*, 738 F. App'x 448, 448 (9th Cir. 2018) (rejecting omission claim where omitted facts had been publicly disclosed); *McGoveny v. Aerohive*

11

*Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019); *Paskowitz v. Pacific Capital Bancorp*, No. CV 09-6449 DW (JCx), 2009 WL 4911850, at *6 (C.D. Cal. Nov. 6, 2009). However, as described above, Defendants' assertion of the truth of the market defense at this stage is inappropriate. Further, FAERS data files only contain raw data and "[a] simple search of FAERS data cannot be performed with these files by persons who are not familiar with creation of relational databases." (Doc. No. 55 at 24.) In *Philco*, the plaintiffs were sophisticated investors in the pharmaceutical industry and the data had been referenced in public disclosures. *See Philco Invs.*, No. C10-02785 CRB, 2011 WL 4595247, at *9. That is not the case here. There are no facts present that Plaintiff was a sophisticated investor in the pharmaceutical industry and this data was not referenced in a public disclosure by Defendants.

Defendants also argue that there are no facts alleged that show that the FAERS reports raised a "red flag" or were inconsistent with anything Defendants said. (Doc. No. 52-1 at 25.) However, the FDA decided to revaluate the drug's safety based on these reports. (Doc. No. 48 ¶ 125.) Accordingly, Plaintiff has adequately pled that the statements were false or misleading because they failed to disclose reports of death in patients taking NUPLAZID.

    c. *Duty to Disclose Kickbacks*

Lastly, Defendants argue that they did not have a duty to accuse itself of wrongdoing. (Doc. No. 52-1 at 26.) "[F]ederal securities laws do not require a company to accuse itself of wrong-doing." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037, 1043 (N.D. Cal. June 28, 2017). While this is true, Plaintiffs argument is that Defendants had a duty to accurately describe its business practices, which included kickbacks to physicians. *See In re Qualcomm Inc. Sec. Litig.*, No. 17CV121-JAH-WVG, 2019 WL 1239301, at *4 (S.D. Cal. Mar. 18, 2019). Here, Defendants did discuss their commercialization strategy. Defendants discussed specific aspects of their strategy in NUPLAZID's success and rising prescription rates. Thus, as the complaint alleges, kickbacks were a part of Defendants business practices. As Defendants chose to discuss

their commercialization strategy, they had a duty to disclose that they were allegedly paying physicians to prescribe NUPLAZID. Accordingly, Plaintiff has adequately pled that the statements were false or misleading because they failed to disclose payments to physicians.

### iv. Scienter

"Scienter is [the] essential element of a § 10(b) claim." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1032 (9th Cir. 2002). The Supreme Court has explained that scienter for purposes of Section 10(b) and Rule 10b–5 is "the defendant's intention to deceive, manipulate or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007). The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)). This means a plaintiff "must provide, in great detail, all the relevant facts forming the basis of her belief" that the defendant has acted with "deliberate recklessness or intent." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008). A "strong inference" is one that a reasonable person would deem "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. When analyzing the sufficiency of a plaintiff's scienter pleadings, the Court must "determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011). "[I]f no individual allegation is sufficient, we conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.*

Here, Plaintiff alleges that scienter has been adequately pled because: (1) Defendants tracked adverse events and had access to data showing that the Company paid doctors; (2) three ACADIA directors resigned four days after the FDA approved NUPLAZID; and (3) NUPLAZID is ACADIA's only source of revenue. (Doc. No. 55 at 26–29.) The Court will address each argument in turn.

First, Plaintiff argues that complaint supports a compelling inference of scienter because Defendants had access to data showing that ACADIA made large payments to physicians that prescribed NUPLAZID and Defendants admitted they tracked adverse events. "The most direct way to show both that a statement was false when made and that the party making the statement knew that it was false is via contemporaneous reports or data, available to the party, which contradict the statement." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). Here, the PPACA requires companies to report transfers of value to physicians to the government on an annual basis. Further, Defendants have a legal obligation to submit this data to the Center for Medicare and Medicaid Services. Accordingly, given the reporting requirements, Defendants cannot claim ignorance of the payments, and in fact Defendants do not claim ignorance in their motion. *See Bartelt v. Affymax, Inc.*, No. 13-CV-01205-WHO, 2014 WL 231551, at *13 (N.D. Cal. Jan. 21, 2014). Defendants argue that there are no allegations to show what any Defendant believed about the reports or payments. *See In re Rigel Pharm. Sec. Litig.*, 697 F.3d 869, 883–84 (9th Cir. 2012). However, there is an inference of scienter. As alleged, Defendants had access to this information and were likely aware that ACADIA was making large payments to physicians that prescribed NUPLAZID with frequency.

Second, it is undisputed that NUPLAZID is ACADIA's only product. Accordingly, Defendants focused all their attention on successfully commercializing NUPLAZID. Accordingly, the Court agrees that this supports an inference of scienter. It is likely that, based on the allegations in the complaint, that they knew about the alleged scheme to pay off physicians to prescribe NUPLAZID. *See In re Amgen Sec. Litig.*, No. CV 07-2536 PSG (PLAx), 2014 WL 12585809, at *11 (C.D. Cal. Aug. 4, 2014). Defendants argue that there must be "red flags" so dramatic that it would be "absurd" to think that Defendants "did not know that something was wrong." *Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018). Here, there were red flags. The data that Defendants do not dispute tracking clearly showed red flags. Based on the allegations, the fact that NUPLAZID was ACADIA's only product supports the inference of scienter.

Third, it is undisputed that on May 3, 2016, three members of ACADIA's Board of Directors resigned. This was four days after the FDA approved NUPLAZID. Plaintiff argues that the timing of these resignations supports scienter and suggests that they wanted no part of the drug's commercialization. While this factor alone does not support a strong inference of scienter, if taken together with the other facts alleged, this fact does support scienter. It is plausible that the directors resigned due to the information regarding payments to physicians.

Accordingly, the Court **DENIES** Defendants' motion to dismiss regarding the element of scienter.

### v. Loss Causation

Even when deceptive conduct is properly pled, a securities fraud complaint must also adequately plead "loss causation." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011). Loss causation is shorthand for the requirement that "investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss." *Id.* Thus, like a plaintiff claiming deceit at common law, the plaintiff in a securities fraud action must demonstrate that an economic loss was caused by the defendant's misrepresentations, rather than some intervening event. *Dura*, 544 U.S. at 343–44. The burden of pleading loss causation is typically satisfied by allegations that the defendant revealed the truth through "corrective disclosures" which "caused the company's stock price to drop and investors to lose money." *Halliburton*, 573 U.S. at 808.

Plaintiff alleges that there were three stock drops. On April 9, 2018, the stock dropped 23.4%. On April 25, 2018, the stock dropped 21.9%. Finally, on July 9, 2018, the stock dropped 6.8%. On April 9, 2018, CNN reported that "[p]hysicians, medical researchers and other experts told CNN that they worried that [NUPLAZID] had been approved too quickly, based on too little evidence that it was safe or effective." (Doc. No. 48 ¶¶ 17, 121.) Defendants argue that this article simply rehashed the already-public FAERS data. However, as explained above, the FAERS data is raw data and a simple search cannot be done. Accordingly, the Court finds this argument unpersuasive.

On April 25, 2018, CNN reported that the FDA was re-examining NUPLAZID. (Doc. No. 48 ¶¶ 19, 125.) Defendants argue that the announcement of an investigation without more is insufficient to establish loss causation. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014); *see also Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013); *Mauss v. Nuvavsive, Inc.*, No. 13-cv-2005 JM (JLB), 2014 WL 6980441, at *6–7 (S.D. Cal. Dec. 9, 2014). Further, Defendants allege the investigation alleged to nothing being amiss and therefore, Plaintiff could not allege "more." However, the fact that the FDA affirmed its approval of NUPLAZID "does not *ipso facto* immunize [Defendants] from liability." *See In re Amgen Sec. Litig.*, No. CV 07-2536 PSG (PLAx), 2014 WL 12585809, at *22 ("the issue before the Court is no whether the FDA … approved Amgen's products as safe and effective, but whether Defendants violated securities laws.") Thus, Plaintiff has alleged loss causation for the stock drop on April 25, 2018.

On July 9, 2018, the stock dropped following the SIRF report that cited to data on Defendants' payments to doctors and NUPLAZID prescriptions and alleged that Defendants must have been "dispensing wads of cash to doctors to incentivize prescription writing." (Doc. No. 52-1 at 32.) Defendants allege that this report also simply rehashed the CNN article and the data regarding payments was already public. Defendants explain that repackaging public information does not constitute a disclosure. Further, Defendants argue that using public information to form an opinion is really only disclosure of the opinion itself. *See Meyer*, 710 F.3d at 1199. However, as pled, the allegations create a sufficient connection between the misrepresentations and the decline in stock price. *See Constr. Workers Pension Tr. Fund v. Genoptix, Inc.*, No. 10CV2502-CAB (DHB), 2013 WL 12123841, at *7–8 (S.D. Cal. Mar. 22, 2013).

Thus, the Court **DENIES** Defendants' motion to dismiss regarding loss causation.

/ / /

/ / /

/ / /

/ / /

      vi.    <u>Section 20(a)</u>

Section 20(a) imposes liability on control persons. 15 U.S.C. § 78t(a). "To establish liability under Section 20(a), a plaintiff must first prove a primary violation of Section 10(b) or Rule 10b-5." *Kelly v. Electronic Arts, Inc.*, 71 F. Supp. 3d 1061, 1068 (N.D. Cal. 2014). Since Plaintiff has adequately pled a Section 10(b) claim and Defendants only challenged Plaintiff's Section 20(a) claim on that basis, the Court finds that Plaintiff has adequately pled a Section 20(a) claim. Accordingly, the Court **DENIES** Defendants' motion to dismiss regarding Section 20(a).

## V.    CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss. Plaintiff must ensure that the statements upon which he bases his allegations are actionable statements. Plaintiff will have **forty-five (45) days** from the date of this Order to file an amended complaint addressing the deficiencies noted herein.

**IT IS SO ORDERED.**

Dated: June 1, 2020

                                              Hon. Anthony J. Battaglia
                                              United States District Judge